UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 22-cr-104-2 (RBW) |
| AARON HARRIGAN | : | |
| Defendant. | : | |

## MEMORANDUM
## IN SUPPORT OF PRE-TRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that defendant Aaron Harrigan be detained pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(A) (violation of 18 U.S.C. § 1951); (f)(2)(A) (serious risk of flight); and (d)(1)(A)(i) (on release pending trial for a local felony). The government respectfully requests that the following points and authorities, as well as any other facts, arguments, and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

### Introduction

The defendant is charged with Conspiracy to Interfere with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951 (Count 1 of the Indictment) and two counts of Sale or Receipt of Stolen Vehicles, in violation of 18 U.S.C. § 2313(a) (Counts Eight and Nine of the Indictment).  At the defendant's arraignment and initial appearance on March 30, 2022, the government orally moved for detention pending trial pursuant to the above-referenced provisions of the federal bail statute. Based on the defendant's conduct and characteristics, the government

1

respectfully requests that the Court hold the defendant without bond pending trial to prevent the defendant's flight and ensure the safety of the community.

## II. Legal Authority and Argument

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Further, the government may proceed by way of proffer. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *Smith*, 79 F.3d at 1210, *see also Williams*, 798 F. Supp. at 36.

There are four factors under Section 3142(g) that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). A review and understanding of the facts and circumstances in this case require the Court to conclude that there is no condition or combination of conditions that would assure the safety of the community. *See* 18 U.S.C. § 3142(e)(1).

### A. Nature and Circumstances of the Offenses Charged

The first factor for the Court's consideration, the nature and circumstances of the offense

charged, weighs in favor of detention. Over the last few months, the Federal Bureau of Investigation (FBI) and other law enforcement agencies have been conducting a criminal investigation into individuals believed to be responsible for more than a dozen commercial armed robberies since January 1, 2022, in Washington, D.C.; Montgomery County, MD; and Prince George's County, MD. Many of these armed robberies have been linked by, among other things, vehicles, physical characteristics of the assailants, weapons used (including multiple firearms), and/or surveillance videos.

Through investigation, law enforcement was able to identify a black Acura that was used in some of the armed robberies. A stolen black Acura was recovered on February 22, 2022. This Acura had a temporary tag that was the same as one captured on surveillance during one of the robberies. Location information obtained from the infotainment system of the Acura showed it stopped multiple times in a specific block in Northwest D.C. (were a a residence linked to the defendant and co-defendant Stephon Harrigan, the defendant's brother, was located). This was also corroborated by surveillance cameras in the area. The location information also showed that the black Acura stopped frequently in a specific area of Northeast D.C. (where an address linked to co-defendant Tavarus Thompson was located).

On March 1, 2022, the Metropolitan Police Department (MPD) located a dark grey Lexus ES350 in the block with the address linked to Thompson. The vehicle was parked in such a way that it appeared whoever had parked it had attempted to obscure any tags. Law enforcement determined that the Lexus had been stolen and had stolen tags on it, and the owner consented to placing a GPS tracking device on the Lexus.

On Sunday, March 6, 2022, at approximately 9:30 a.m., the GPS tracker alerted that the Lexus had moved. FBI physical surveillance tracked the vehicle to the block in Northwest D.C. where the residence linked to the Harrigans was located. One individual was driving the Lexus. At approximately 11:45 a.m., FBI physical surveillance observed the individual park the Lexus at the intersection of 1st St., NW, and Farragut St., NW. Physical surveillance watched the vehicle until approximately 1:18 p.m., when two individuals departed the residence linked to the Harrigan brothers and entered the Lexus.

Moments after the two individuals entered the Lexus, the Lexus departed the area north on 1st St., NW. FBI agents initiated a traffic stop and the Lexus attempted to flee. FBI agents blocked the intersection of 1st St., NW, and Gallatin St., NW, and the occupants in the Lexus, who were later identified as Stephon Harrigan and the defendant, fled on foot. The defendant, who had been driving the Lexus, was detained on New Hampshire Avenue. Stephon Harrigan ran south on 1st St., NW, and entered an alley that led to the parking lot of the Avenue Supermarket located at 5010 New Hampshire Ave., NW. Stephon Harrigan then entered a woman's (V1) vehicle without her consent and physically forced her to drive him away from the area. V1 wrecked into an unmarked MPD cruiser conducting surveillance in the area. Stephon Harrigan again attempted to flee on foot but was detained.

Inside the Lexus, law enforcement found a stack of credit cards and IDs in the driver's door handle which were inconsistent with either Harrigan brother and appeared to be stolen. Additionally, law enforcement recovered several digital devices; various keys, including an Acura key which law enforcement confirmed opened the black Acura TLX referenced above; and a dark navy jacket with a white zipper consistent with a jacket worn in a number of armed robberies.

On March 6, 2022, pursuant to a search warrant, law enforcement searched the residence connected to the Harrigan brothers. In the living room, where a family member indicated the defendant slept, law enforcement recovered a computer and approximately 7 social security cards and 3 ID cards. One of the social security cards corresponded to credit cards and an ID located inside the Lexus. Law enforcement also recovered approximately 12 sets of car keys in the residence. None of the social security cards or IDs appear to belong to any of the occupants of the residence, and some of them are linked to addresses in Maryland. Similarly, the car keys recovered appear to be from various types of vehicles.

In a bedroom primarily occupied by a female relative of the Harrigan brothers but where Stephon Harrigan sometimes stayed, law enforcement located men's clothing and shoes and a firearm. Law enforcement was told that the firearm would have been Stephon Harrigan's. Also located in the apartment was a photograph in which Stephon Harrigan's girlfriend was wearing a distinctive yellow "Aeropostale" sweatshirt consistent with a sweatshirt used in a number of armed robberies.

The firearm recovered was determined to be a black firearm with a silver ejection port, .40 caliber with no serial number. This firearm appeared to be a Personally Made Firearm (PMF), commonly known as a "ghost gun." At the time it was recovered, it was loaded with 12 rounds in a 13-round magazine and 1 round in the chamber. Due to the silver ejection port, the firearm recovered is consistent with one of the firearms seen on surveillance video during some of the armed robberies.

During a post-arrest, Mirandized, interview on March 6, 2022, the defendant waived his rights and agreed to speak with law enforcement. He stated that it used to be his "thing" to steal

cars and sell them. He indicated he knew the Lexus he was driving on March 6, 2022, was stolen and he was on his way to sell it when he was arrested. He denied being the one who stole it. He also admitted that he got the social security cards and IDs from stolen vehicles. He claimed he had never been in or seen a black Acura.[1] He also did not admit to committing any of the robberies under investigation.

Further investigation led law enforcement to identify Tavarus Thompson as being identified as one of the previously unidentified co-conspirators in this string of commercial robberies. Shortly after the Harrigans were arrested, Thompson went to South Carolina. Law enforcement obtained search warrants to search an address linked to him in northeast D.C., *see* 22-sw-65; and the residence he was staying at in South Carolina. These warrants were executed on March 18, 2022. During a search of the apartment in South Carolina, law enforcement found, among other things, a Taurus Model 709 9mm handgun and magazine and clothing that is consistent with what was worn in some of the robberies. At the residence in D.C., law enforcement found, among other things, clothing that is consistent with what was worn in some of the robberies.

On March 28, 2022, the grand jury returned the 11-count Indictment in the instant case. Among other things, the Indictment alleges that 25 armed robberies were carried out in furtherance of the Hobbs Act conspiracy.

B.   **Weight of the Evidence against the Defendant**

The second factor for the Court's consideration, the weight of the evidence, also clearly weighs in favor of detention. The evidence against the defendant is strong. When law enforcement attempted to stop the Lexus, the defendant fled. In the Lexus and in a residence linked to the

---

[1] The defendant was arrested on March 6, 2022, but citation released. There was an active warrant for his arrest. *See* 22-mj-53-ZMF. Stephon Harrigan has been detained since his arrest on March 6, 2022.

defendant, law enforcement recovered a firearm and clothing consistent with what was worn in some of the robberies. Further, the defendant admitted that he knew the Lexus was stolen and claimed that he was going to sell it. The Acura that was used in some of the robberies frequented the area of a residence linked to the Harrigans, and inside of the Lexus was a key to that Acura.

      C.     **The Defendant's History and Characteristics**

The third factor, the history and characteristics of the defendant, weighs in favor of his detention. In 2015, the defendant was convicted in D.C. Superior Court case 2013-CF2-021756 of misdemeanor Receiving Stolen Property and Attempted Unauthorized Use of a Vehicle. In 2017 in Maryland, he was arrested and charged with Theft Less Than $1000 Value, Rogue and Vagabond, and Malicious Destruction of Property. In 2019, he was arrested in D.C. and charged with felony Receiving Stolen Property. It thus appears that his criminal conduct and alleged criminal conduct have grown more serious over time.

Further, it appears that the defendant would continue to reoffend if released. The cases arising from his 2017 Maryland arrest and 2019 D.C. arrest were pending at the time he allegedly committed the instant offenses. Further, even leaving aside the extremely serious allegations embodied by the instant offenses, the defendant has not fully complied with pretrial release: a warrant was issued in his Maryland case, and he failed to report for a drug test in the D.C. case before the pandemic brought such testing to a halt.

      D.     **Danger to the Community**

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs in favor of detention. The defendant's criminal history and alleged conduct in this case—participation in a wide-ranging conspiracy to commit

7

Case 1:22-cr-00104-RBW   Document 11   Filed 03/31/22   Page 8 of 8

armed robberies of establishments—is extremely concerning to the government and show he is a danger to the community.

Investigation of the instant case continues, and the defendant potentially faces even more charges. The defendant's criminal history, history of bench warrants, issues on supervision, and attempt to flee on March 6, 2022, demonstrate his continued disregard for supervision and the law and show he cannot abide by conditions of release, is a flight risk, and poses a significant danger to the community.

Given the above assessment of all four relevant factors, no condition, or combination of conditions, can ensure that the defendant will comply with court orders, abide by appropriate release conditions, or return to court.

### III. Conclusion

The government respectfully requests that the Court issue an Order granting its motion that the defendant be held without bond pending trial.

Respectfully submitted,

MATTHEW M. GRAVES
ACTING UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:    */s/ Solomon S. Eppel*
SOLOMON S. EPPEL
Assistant United States Attorney
D.C. Bar No. 1046323
Violence Reduction and Trafficking Offenses
601 D St., N.W.
Washington, D.C. 20001
(202) 252-6661
solomon.eppel@usdoj.gov